UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

Plaintiff,

v.

DEBORAH KELLY; EDITH BARNETT;
SHIRLEY CONNER-BARNETT; M–B-M, A
MINOR; AND O.H. PYE III FUNERAL
HOME, INC.,

Defendants.

Case No. 16-cv-12544

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

## OPINION AND ORDER GRANTING SHIRLEY CONNER-BARNETT'S MOTION FOR SUMMARY JUDGMENT [37]

### I. INTRODUCTION

This case was brought via interpleader in response to a dispute over a decedent's life insurance benefits. The cross-claimants dispute whether the decedent's modifications of his life insurance beneficiary were invalid due to lack of capacity or undue influence. Pending before the Court is Shirley Conner-Barnett's, the final beneficiary, Motion for Summary Judgment [37]. For the following reasons, the Court will **GRANT** summary judgment.

## II. FACTUAL BACKGROUND

James Barnett, Jr. (hereinafter "Mr. Barnett"), was born on November 21, 1943. Dkt. No. 5-9, p. 2 (Pg. ID 168). Mr. Barnett worked for Fiat Chrysler Automobiles US LLC (hereinafter "Fiat") and eventually retired. Dkt. No. 5, p. 3 (Pg. ID 118). Mr. Barnett secured life insurance coverage through Fiat Group Life Insurance Plan (the "Plan"). *Id*. Metropolitan Life Insurance ("MetLife") is a fiduciary and is responsible for administering the Plan in accordance with The Employee Retirement Income Security Act ("ERISA"). *Id.*

Throughout his life, Mr. Barnett struggled with alcohol abuse and also suffered from hypertension and diabetes. Dkt. No. 39-2. On December 1, 2014, Detroit Police reported to Mr. Barnett's residence. Dkt. No. 5-13, p. 2 (Pg. ID 179). According to the police report, Mr. Barnett fired one shot into the drivers-side window of his own vehicle, believing that he saw someone in his vehicle. *Id*. Mr. Barnett also stated to officers that there was a woman seated at a table in his home and that an unknown man was in the rear of his home. *Id*. However, the officers did not see either of the people Mr. Barnett described. *Id*.

The officers confiscated Mr. Barnett's gun, a black .40 caliber Smith & Wesson semi-automatic pistol. Dkt. No. 5-13, p. 3 (Pg. ID 180). Later, the police transported Mr. Barnett to the hospital. Dkt. No. 39-2, p. 3 (Pg. ID 358). At that time, medical notes indicated that Mr. Barnett did not have any hearing or visual problems.

*Id.* Additionally, Mr. Barnett denied having any visual hallucinations. The doctors scheduled a series of medications. *Id.* As best as the Court can tell, all medications seemed to address Mr. Barnett's diabetes and hypertension.

On July 16, 2015, Detroit Police again reported to Mr. Barnett's residence. Dkt. No. 5-13, p. 4 (Pg. ID 181). According to the police report, Deborah Kelly, Mr. Barnett's girlfriend, visited him. *Id.* When Ms. Kelly left, Mr. Barnett realized that his wallet and his gun, a black Smith & Wesson .40 caliber pistol, were missing. *Id.* The police report states that Ms. Kelly took the gun to secure it. *Id.*

Mr. Barnett passed away on October 15, 2015 at the age of 71. Dkt. No. 5-9, p.2 (Pg. ID 168). He left behind six children, at least one grandchild, an ex-wife, and a long-term girlfriend. At the time of his death, Mr. Barnett earned life insurance benefits in the amount of $27,488.00. On October 30, 2015, Shirley Conner-Barnett executed a funeral home assignment in the amount of $12,534.54 for Mr. Barnett's funeral expenses at O.H. Pye, III Funeral Home. Dkt. No. 5-15, p. 2 (Pg. ID 194).

Shortly after Mr. Barnett's death, MetLife received competing claims for Mr. Barnett's life insurance benefits. Dkt. No. 5, pp. 5–6 (Pg. ID 120–121). In the years leading up to his death, Mr. Barnett changed the beneficiary to his life insurance several times. The changes are as follows:

| Date | Beneficiary's Name | Relationship | Channel | Share |
|------|------|------|------|------|
| 7/17/2008 | M–B-M | Grandchild | Web | 100% |

| 12/30/2011 | Shirley Conner-Barnett | Ex-Spouse | Phone | 100% |
|---|---|---|---|---|
| 08/09/2013 | Edith Garnett[1] | Child | Phone | 100% |
| 06/11/2015 | Deborah Kelly | Girlfriend | Phone | 100% |
| 07/31/2015 | Shirley Conner-Barnett | Ex-Spouse | Phone | 100% |

Dkt. No. 5-8, p. 3 (Pg. ID 165).

On November 4, 2015, LaShawn Barnett, Mr. Barnett's daughter, alleged that Mr. Barnett suffered from alcoholic hallucinations at the time he changed the beneficiary from Deborah Kelly to his ex-wife Shirley Conner-Barnett. *Id.* MetLife brought this action, as an interpleader, to resolve the dispute among the potential beneficiaries. Although five potential beneficiaries are listed in this action, now, only two potential beneficiaries seem to make claims to the benefits: Shirley Conner-Barnett and Edith Garnett. Ms. Conner-Barnett filed a Motion for Summary Judgment on March 3, 2017. Only Edith Garnett responded to the Motion for Summary Judgment.

The pending motion for summary judgment and its response, raise two issues: (1) where the burden lies in prosecuting a motion for summary judgment; and (2)

---

[1] The parties refer to Edith sometimes as Edith Barnett and sometimes as Edith Garnett. It seems that after marriage, Edith changed her last name to from Barnett to Garnett. To be consistent, the Court will refer to Edith as "Edith Garnett" or "Ms. Garnett."

-4-

whether the evidence presented creates an issue of material fact with regard to the alleged undue influence.

### III. LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C*ehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. LAW AND ANALYSIS

#### 1. Burden of Prosecuting a Motion for Summary Judgment

"When moving for summary judgment, the movant has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Sols.*

*Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (internal citations omitted). Only after the moving party meets this burden must the non-moving party come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Corp.*, 475 U.S. at 587.

Ms. Garnett argues that Ms. Conner-Barnett has not met this initial threshold under *Celotex*. The Court disagrees. *Celotex* does not require the moving party to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp.*, 477 U.S. 317, 323. The movant may meet the initial burden by "pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial." *Farmington Cas. Co. v. Cyberlogic Techs., Inc.*, 996 F. Supp. 695, 698 (E.D. Mich. 1998) (citing *Tolton v. American Biodyne, Inc.,* 48 F.3d 937 (6th Cir.1995); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir. 1989)). In this case, the movant argues that, "the only formal discovery…was done by Edith Barnett…and otherwise fails to provide

evidentiary support for…claims of undue influence." Dkt. No. 37, p. 6 (Pg. ID 328).

By pointing out an alleged failure to produce evidence of undue influence, the

movant has met her initial burden, requiring Ms. Garnett to show that there is a

genuine issue for trial. *See Cox*, 53 F.3d at 149 ("Essentially, a motion for summary

judgment is a means by which to challenge the opposing party to put up or shut up

on a critical issue.").

2. Undue Influence

In Michigan, "[t]o establish undue influence it must be shown that the grantor

was subjected to threats, misrepresentation, undue flattery, fraud, or physical or

moral coercion sufficient to overpower volition, destroy free agency and impel the

grantor to act against his inclination and free will. Motive, opportunity, or even

ability to control, in the absence of affirmative evidence that it was exercised, are

not sufficient." *In re Estate of Karmey*, 468 Mich. 68, 75, 658 N.W.2d 796, 799

(2003). "In some transactions the law presumes undue influence. The presumption

of undue influence is brought to life upon the introduction of evidence which would

establish (1) the existence of a confidential or fiduciary relationship between the

grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits

from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's

decision in that transaction." *Kar v. Hogan*, 399 Mich. 529, 537, 251 N.W.2d 77, 79

(1976). "It is frequently said, therefore, that a presumption of undue influence arises

where the person benefitted is in a fiduciary, confidential or quasi-confidential relationship, e. g., a trustee, attorney, physician, clergyman or business adviser." *Kar*, 399 Mich. 529, 556.

In this case, there does not appear to be an allegation of undue influence taken by any person with a fiduciary relationship. Therefore, consistent with Michigan law, there is no presumption of undue influence. Instead, non-movant must demonstrate that there is an issue of fact regarding whether Mr. Barnett was subject to undue influence.

Ms. Garnett argues that summary judgment is improper on the issue of undue influence because "medical records show that [Mr. Barnett] was suffering from mental issues due to, at minimum, alcohol, starting in at least 2014 wherein they manifested themselves in via violent hallucinations." Dkt. No. 39, p. 9 (Pg. ID 353). Ms. Garnett also objects to the presumption that Mr. Barnett was competent to contract. *Id*. The Court will take up the matter of competence first.

### A. Presumption of Competence

In Michigan, competence to change a beneficiary on a life insurance policy is akin to the test of metal capacity to contract. "The test of mental capacity to contract is whether the person in question possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which the person is engaged. To avoid a contract it must appear not only that the person was of unsound mind or

insane when it was made, but that the unsoundness or insanity was of such a character that the person had *no reasonable perception of the nature or terms of the contract*." *In re Estate of Erickson*, 202 Mich. App. 329, 332, 508 N.W.2d 181, 183 (1993) (emphasis added). "Similarly, the test to be applied in determining the mental competency of an insured at the time the insured attempts to effect a change of beneficiaries of a life insurance policy is whether the insured then had sufficient mental capacity to understand the business in which the insured was engaged, to know and understand the extent of the insured's property, how the insured wanted to dispose of it, and who are dependent upon the insured. A mentally incompetent person is one who is so affected mentally as to be deprived of sane and normal action. A person may be incapable of conducting his business successfully and still not be mentally incompetent." *Id.* at 332–33 (internal citations omitted).

"Michigan courts generally presume the legality, validity, and enforceability of contracts." *Coates v. Bastian Bros., Inc.,* 741 N.W.2d 539, 545 (Mich. Ct. App. 2007). This presumption includes the assumption that the individuals signing a contract were mentally competent at the time of the signing. *See Van Buren v. St. Joseph Cnty. Village Fire Ins. Co.,* 28 Mich. 398, 408 (1874) ("And for this purpose the person applying for insurance, and entering into a contract with that view, must be presumed to know something, to be competent to contract, and therefore to understand the general nature and fundamental principles of the contract into which

he enters, especially when these are expressed in unambiguous terms, and unless some imposition or deception has been practiced to prevent it; and if it is not shown that he is incapable of reading, he must be presumed to have read the paper he has signed."); *Beaubien v. Cicotte,* 8 Mich. 9, 11 (1860) ("But it is said, the law presumes this soundness of mind till the contrary be proved."). Therefore, the party seeking to invalidate an insurance designation (Ms. Garnett, in this case) bears the burden of proving that the decedent lacked the legal capacity to contract.

Ms. Garnett urges the Court to reject Michigan's presumption of competence to contract. Ms. Garnett argues that the "presumption that Decedent was competent to contract is not binding on this Court and is further incompatible with the standards of review." Dkt. No. 39, p. 353. Neither argument is persuasive. It is true that Michigan state courts do not bind this Court. Nevertheless, Michigan case law provides important guidance. "It is clear that the law of this Circuit requires the ERISA plan administrator to pay out plan proceeds in accordance with the ERISA plan documents." *Cent. States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 678 (6th Cir. 2000). However, since ERISA does not contain any provisions regulating the problem of beneficiary designations that are the result of undue influence, or otherwise improperly procured, federal common law must apply to Ms. Garnett's claims. *Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000). In the absence of established federal common law in this Circuit dealing with the

-10-

issues of undue influence and competence, it is proper to look to state-law principles for guidance. *Id*.

In this case, it is telling that Ms. Garnett does not support her argument with any authority—be it federal common law, statute, or even a secondary source. The Court is unpersuaded by an unsupported argument that the Court should disregard Michigan precedent that dates back to the 1800s, simply because it is adverse to Ms. Garnett. Accordingly, Mr. Barnett is presumed competent unless evidence rebuts that presumption.

Having determined that Mr. Barnett is presumed competent to contract, the Court turns next to whether the evidence before the Court (Edith Garnett's Affidavit, Mr. Barnett's medical records, and police reports) creates an issue of fact that prohibits summary judgment as to the issue of undue influence.

B. Edith Garnett's Affidavit

Attached to the Ms. Garnett's Response is a document titled "Affidavit of Edith Garnett." Dkt. No. 39-3, p. 2 (Pg. ID 360). The document is not signed by Edith Garnett; nor is it dated; nor is it notarized. *Id*. p. 3 (Pg. ID 361).

"Fed. R. Civ. P. 56(c) explicitly allows the non-movant to file affidavits in response to a summary judgment motion, regardless of whether discovery has closed." *Bell v. Prefix, Inc.*, 321 F. App'x 423, 427 (6th Cir. 2009) (citing *Bilyeu v.*

*Metro. Gov. of Nashville & Davidson County,* 136 F. App'x. 786, 788 (6th Cir. 2005).

"[A]ffidavits must be signed and properly attested to be cognizable under Rule 56." *Sfakianos v. Shelby Cty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012) (citing *Nassif Ins. Agency, Inc. v. Civic Prop. & Cas. Co.*, No. 03-2618, 2005 WL 712578, at *3 (6th Cir. Mar. 30, 2005) ("Unsigned affidavits do not comply with Fed. R. Civ. P. 56(e).")). "By definition an affidavit is a sworn statement in writing made...under an oath or on affirmation before...an authorized officer." *Id*. An unsworn declaration may satisfy Rule 56(e) if it is signed, dated, and recites that it was signed "under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746. However, "an unsigned affidavit is a contradiction in terms." *Sfakianos*, 481 Fed. App'x at 245.

In this case, Edith Garnett's unsigned and unsworn "affidavit" is not cognizable under Rule 56. *See Wingz & Thingz 1 v. Penn-Star Ins. Co.*, 547 F. App'x 766, 767 (6th Cir. 2013) ("The district court properly rejected plaintiff's unsigned and unsworn 'affidavits.' "); *Sfakianos*, 481 F. App'x. at 245 (affirming district court judgment discarding unsigned, unsworn affidavits.). Accordingly, its contents, and the associated arguments are rejected.

On May 9, 2017, Robert Hamor, who has not filed an appearance on behalf of any party, filed a second affidavit. This second affidavit appears to be signed, sworn and notarized. It is dated March 27, 2017—three days after Ms. Garnett's

-12-

Response was submitted to the Court. Mr. Hamor offers no explanation or justification for why the affidavit is untimely.

The second affidavit states:

> I have personal knowledge of the statements made in this Affidavit…During several conversations, [Mr. Barnett] indicated that he felt that Shirley and Deborah were forcing themselves back into his life and that they were manipulating him and his finances….It is my belief that, based upon these concerning allegations and my conversations with James, that Shirley and Deborah were taking advantage of him based upon his lack of understanding and confusion by changing his beneficiary designation to them.

Dkt. No. 40, p. 1 (Pg. ID 362).

Even if the Court accepted this improperly filed, unexcused and untimely affidavit, there are several problems with it. First, despite the statement to the contrary, the affidavit proceeds on hearsay, rather than personal knowledge. This is evident because the manipulation mentioned in Ms. Garnett's affidavit is based on Mr. Barnett's recollection restated to Ms. Garnett, rather something Ms. Garnett directly observed. This is insufficient. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992) ("[W]ith regard to Plaintiff's hearsay Affidavit, the District Court correctly found that the Affidavit was not a proper Rule 56(e) affidavit because it was not made on personal knowledge and did not set forth "facts" that would be admissible into evidence. Even if the Court were to consider the Affidavit, the statements contained therein are nothing more than rumors, conclusory allegations

and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").

Second, the portions of the affidavit that are not hearsay are conclusory, and insufficient to defeat summary judgment. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."); *see also Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (finding that "conclusory statements" unsupported by specific facts will not permit a party to survive summary judgment); *Doren v. Battle Creek Health System*, 187 F.3d 595, 598–99 (6th Cir. 1999) (holding that affidavits that contained no "specific facts" but "are merely conclusory, restating the requirements of the law...therefore cannot create a genuine issue of material fact sufficient to defeat summary judgment."); *Robinson v. Union Carbide Corp.*, 805 F. Supp. 514, 523 (E.D. Tenn. 1991) (holding that the opponent of a motion for summary judgment cannot survive it "merely by restating his conclusory allegations in affidavit form, or by presuming the existence of material facts.") Because the critical portions of the affidavit proceed on hearsay and conclusory allegations, the affidavit should be excluded.

### C. The Totality of the Evidence

With the affidavit excluded, this case boils down to two pieces of evidence: the police reports and Mr. Barnett's medical records. When viewing that evidence

-14-

in the light most favorable to the non-moving party, it is clear that Mr. Barnett struggled with alcohol and hallucinated on at least two occasions. Six months after Mr. Barnett shot a gun into his own vehicle while hallucinating, Mr. Barnett changed his life insurance beneficiary from Edith Garnett to Deborah Kelly. Then, two weeks after Mr. Barnett called the police (seemingly and mistakenly believing that Deborah Kelly took his gun), he changed his life insurance beneficiary from Deborah Kelly to Shirley Conner-Barnett.

At most, the evidence demonstrates that within a year of Mr. Barnett's death, he suffered from a weakened mental state due to hallucinations and alcohol. Even if the Court accepted the argument that Mr. Barnett was manipulated—that still would not be enough survive summary judgment. Demonstrating undue influence pursuant to Michigan state law is very high hurdle to clear. There must be more than the existence of mere coercion or manipulation. The coercion must reach a level that <u>overpowers</u> volition, <u>destroys</u> free will and agency **and** <u>impels</u> the grantor to act against the grantor's inclination and free will. *Karmey*, 468 Mich. 68, 75 (emphasis added). An extremely liberal weighing of the evidence could lead to the inference that Mr. Barnett was being manipulated. In this case, the non-moving parties fail to present any evidence or argument that any manipulation, albeit in Mr. Barnett's weakened mental state, rose to a level to destroy Mr. Barnett's free will **and** forced him to act against his own free will.

-15-

Therefore, despite the arguments to the contrary, there are insufficient facts to invalidate Mr. Barnett's life insurance designation as a result of undue influence.

## V. CONCLUSION

For the reasons stated above, Shirley Conner-Barnett's Motion for Summary Judgment [37] is **GRANTED**.

**SO ORDERED.**

Dated: July 17, 2017

Detroit, MI

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 17, 2017, by electronic and/or ordinary mail.

/s/Tanya Bankston
Case Manager, (313) 234-5213